Marshal L. Mickelson
CORETTE POHLMAN & KEBE
129 West Park Street
P.O. Box 509
Butte, MT  59703
PH   :  406-782-5800
FAX  :  406-723-8919
mmick@cpklawmt.com

Attorneys for Plaintiff


Marshal L. Mickelson
CORETTE POHLMAN & KEBE
129 West Park Street
P.O. Box 509
Butte, MT  59703
PH   :  406-782-5800
FAX  :  406-723-8919
mmick@cpklawmt.com

Attorneys for Plaintiff

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## HELENA DIVISION

| | | |
|---|---|---|
| ARROWOOD INDEMNITY COMPANY, | * | No. CV-12-_____-H-_____ |
| Plaintiff, | * | **COMPLAINT FOR** |
| v. | * | **DECLARATORY JUDGMENT** |
| THE DIOCESE OF MONTANA a/k/a THE ROMAN CATHOLIC DIOCESE OF HELENA a/k/a THE ROMAN CATHOLIC BISHOP OF HELENA, MONTANA, | * | |
| Defendant. | * | |

Plaintiff Arrowood Indemnity Company, formerly known as Royal Indemnity Company ("Arrowood"), by and through its undersigned counsel, brings a Complaint for Declaratory Judgment as follows:

### NATURE OF THE ACTION

1. The Roman Catholic Bishop of Helena, Montana (the "Diocese") is a defendant in two lawsuits alleging that former priests and nuns assigned by the

Diocese abused children in Montana from 1934 though the 1970's. The Diocese sought a defense against those lawsuits from a number of different insurance companies. Upon information and belief, those insurance companies that sold general liability policies to the Diocese have agreed to defend the Diocese in those lawsuits.

2. The Diocese also demanded a defense from Arrowood. The Diocese contends that Arrowood, through one or more of its predecessor insurance companies (the "Royal affiliated insurers"), sold general liability insurance from 1940 through 1960 that provides coverage to the Diocese for the abuse lawsuits.

3. In response to the Diocese's demand, Arrowood undertook an extensive search of its existing historical records, but was unable to locate any evidence that any Royal affiliated insurer sold general liability insurance to the Diocese or any other entity under which the Diocese might obtain coverage. Upon information and belief, the Diocese conducted its own independent investigation, obtaining insurance-related documents from its own historical files, the files of its insurance agent and records archived at Gonzaga University, but was unable to uncover any evidence that a Royal affiliated insurer sold general liability insurance to the Diocese or any other entity that might provide coverage to the Diocese for the abuse lawsuits.

4. However, even after the parties' respective and independent extensive investigations failed to turn up any evidence that a Royal affiliated insurer sold general liability insurance that might provide coverage to the Diocese, the Diocese refuses to withdraw its demand for a defense of the abuse lawsuits. As a result, Arrowood has filed this action seeking declarations that the Diocese cannot meet its burden of proving that any Royal affiliated insurer sold applicable insurance covering the Diocese and that Arrowood owes neither a defense nor indemnity to the Diocese for the abuse lawsuits.

## THE PARTIES

5. Arrowood Indemnity Company is a corporation incorporated under the laws of Delaware, with its principal place of business in Charlotte, North Carolina. Arrowood is a citizen of the states of Delaware and North Carolina. Arrowood was formerly known as Royal Indemnity Company.

6. Upon information and belief, the Diocese is a non-profit corporation doing business in the State of Montana as a provider of religious, spiritual, and educational services. The Diocese may be served with process through its registered agent, C. Franklin Brookhart, 515 North Park Avenue, P.O. Box 2020, Helena, Montana 59624-0000.

## JURISDICTION AND VENUE

7. This Court has personal jurisdiction over the Diocese because it is domiciled in and/or conducts business in the State of Montana.

8. Venue is proper in this judicial district pursuant to § 1391(a)(2) and (b)(2) because a substantial part of the events giving rise to this action occurred in this judicial district.

9. There is complete diversity of citizenship between Arrowood Indemnity Company and the Diocese.

10. The lawsuits for which the Diocese seek defense and indemnity are civil actions in which the amount in controversy exceeds $75,000, exclusive of costs and interests.

11. Because there is complete diversity of citizenship and the amount in controversy exceeds $75,000, this Court has original jurisdiction pursuant to 28 U.S.C. § 1332(a)(1).

## THE DIOCESE'S DEMAND FOR COVERAGE

12. By letter dated November 21, 2011, the Diocese provided to Arrowood copies of two separate lawsuits captioned *William C. Whalen, et al. v. The Diocese of Montana*, Case No. BDV 2011-925, and *John Does, et al. v. Ursuline Sisters of the Western Province, et al.,* Case No. BDV-2011-936 (collectively, the "Lawsuits"), both filed in the First Judicial District Court, Lewis

and Clark County, Montana. A copy of the letter is attached hereto as Exhibit A. The Diocese provided a Third Amended Complaint in the *Whalen* matter by letter dated April 13, 2012, a copy of which is attached hereto as Exhibit B, and a Second Amended Complaint in the *Does* matter by letter dated May 9, 2012, a copy of which is attached hereto as Exhibit C. A copy of the Third Amended Complaint in the *Whalen* matter and the Second Amended Complaint in the *Does* matter are attached hereto as Exhibits D and E, respectively.

13.   The Lawsuits are based on alleged claims of physical, sexual, and emotional abuse allegedly perpetrated against more than a hundred different individuals over a period from 1934 through the 1970s. In the *Whalen* matter, the plaintiffs allege that the Diocese was negligent in failing to protect them against harm from the alleged perpetrators who were allegedly Diocese priests, nuns, and/or the "Diocese's agents." In the *Does* matter, the plaintiffs allege that the Diocese was negligent in failing to protect them against harm from the alleged perpetrators who were allegedly priests assigned by the Diocese and nuns from the Ursuline Sisters of the Western Province.

14.   The Diocese asserts that it is an insured, as successor-in-interest to Ignatius Mission and/or St. Ignatius (collectively, "St. Ignatius"), under certain general liability policies allegedly issued by Royal Insurance Company, Royal Globe Insurance Company or another Royal issuing company to St. Ignatius from

1945 to 1960. The Diocese did not provide Arrowood with copies of any potentially applicable insurance policies or any documents that purportedly form a part of any applicable insurance policies, nor did the Diocese reference any specific policy numbers or specific policy periods associated with any potentially applicable insurance policies. Given the lack of evidence that any Royal affiliated insurer issued any potentially applicable insurance policies that cover the Diocese, Arrowood will refer to these allegedly issued policies as the "Alleged Policies" throughout the balance of this Complaint.

### AFTER EXTENSIVE INDEPENDENT SEARCHES NEITHER THE DIOCESE NOR ARROWOOD UNCOVERED ANY EVIDENCE THAT A ROYAL AFFILIATED INSURER SOLD APPLICABLE INSURANCE

15. When the Diocese sent the Lawsuits to Arrowood, the Diocese did not provide Arrowood with copies of the Alleged Policies or any documents that purportedly form a part of the Alleged Polices, nor did the Diocese reference any specific policy numbers or specific policy periods associated with the Alleged Policies. Nevertheless, Arrowood proceeded to conduct a diligent search of its existing historical records with respect to alleged policies between 40 and 60 years ago to determine if it ever provided coverage to the Diocese that might apply to the Lawsuits. Arrowood undertook a search of databases and archived paper records, including policy, premium, underwriting, and claims records, and specifically including searches for policies issued to or other documentation that

mentions: St. Ignatius; St. Ignatius Mission; St. Ignatius School; Ignatius Mission; Roman Catholic Diocese of Helena; and Roman Catholic Bishop of Helena, Montana.  Arrowood also searched its indices of archived records from its former branch offices in Denver, Portland, Seattle, and San Francisco that could have issued policies to a Montana insured during the 1940's through 1960's.  None of these offices exist any longer.  In response to a request by the Diocese, Arrowood also searched its existing historical records to determine if Arrowood issued any polices to 100 different parishes and missions that purportedly comprise or at one time were associated with the Diocese.  Arrowood's investigation is set forth in letters sent to the Diocese by Arrowood on December 9, 2011; January 17, 2012; April 17, 2012; June 12, 2012; and July 17, 2012 (collectively, "Arrowood's Reservation of Rights Letters").  Copies of those letters are attached hereto as Exhibits F, G, H, I, and J, respectively.

16.  Upon information and belief, the Diocese conducted its own independent search for the Alleged Policies, which included a search of its own records, the records of its insurance agent and records archived at Gonzaga University.  Although the Diocese presented Arrowood with over 700 pages of documents as a result of this independent search, there is not a single document that refers in any way to any general liability policy of insurance being issued by

any Royal affiliated insurer to any entity, including the Diocese or the St. Ignatius Mission.

17. Where documents that the Diocese produced identified policy numbers not associated with any particular insurance company, Arrowood searched its records to determine whether any of those policy numbers are associated with insurance policies sold by any Royal affiliated insurer. Arrowood was unable to locate any of these policy numbers in association with an insurance policy issued by a Royal affiliated insurer.

18. The documents the Diocese provided establish that the Diocese had a long standing historical relationship with the Joe Flynn Insurance Agency in Helena, Montana, including during the 1945 to 1960 period when the Alleged Policies were supposedly issued. Those documents also evidence that the Joe Flynn Insurance Agency acted on behalf of the Diocese in obtaining insurance, including general liability insurance, for the Diocese with a variety of insurers, but not any Royal affiliated insurer. Arrowood searched its existing historical records and can find no evidence that any Royal affiliated insurer did business with the Joe Flynn Agency in Helena, Montana.

19. However, the documents that the Diocese provided to Arrowood do evidence that other insurance companies (not affiliated with Royal) issued general

COMPLAINT FOR DECLARATORY JUDGMENT                                                                 8

liability insurance polices to the Diocese between 1945 and 1960 -- the time period the Diocese claims that the Alleged Policies were issued.

20. After an extensive search that involved a search of its own records, broad additional searches requested by the Diocese related to all of the 100 parishes and missions that apparently are or were associated with the Diocese, and consideration of the irrelevant documents provided by the Diocese, Arrowood has not been able to locate any of the Alleged Policies or any documents that otherwise evidence the existence of the Alleged Policies.

21. The Diocese has conducted its own independent search and also has not located any of the Alleged Policies or provided any documentation to Arrowood that evidences the existence of the Alleged Policies.

22. Arrowood has notified the Diocese that Arrowood was unable to locate copies or any evidence supporting the existence of any Alleged Policies or any other policy of insurance that might provide coverage to the Diocese for the Lawsuits. As a result, Arrowood has informed the Diocese that it has no obligation to defend or indemnify the Diocese in the Lawsuits.

23. Upon information and belief, the Diocese is being defended in the Lawsuits by other insurers of the Diocese and the Diocese is not contributing to the costs of its own defense in the Lawsuits.

## **COUNT 1**

24. Arrowood repeats and incorporates by reference Paragraphs 1-23 of this Complaint for Declaratory Judgment as if fully set forth herein.

25. The Diocese bears the burden of proving the existence, terms and conditions of the Alleged Policies.

26. The Diocese has failed to establish the existence, terms and conditions of the Alleged Polices.  Indeed, the Diocese has failed to uncover any evidence indicating that any Royal affiliated insurer ever provided any general liability coverage to the Diocese or any other entity, including the St. Ignatius Mission, under which the Diocese might claim coverage.

27. Arrowood is under no obligation to defend or indemnify the Diocese in connection with the Lawsuits because the Diocese has not established the existence, terms and conditions of the Alleged Policies.

28. There exists a substantial, bona fide, actual and justiciable dispute regarding the existence, terms and conditions the Alleged Policies.

29. As a result of this current controversy, Arrowood is entitled to have a declaration of its rights and a judicial interpretation of the rights and obligations of the parties as to the existence, terms and conditions of the Alleged Policies.  There is no adequate remedy, other than that requested herein, by which this controversy may be resolved.

## COUNT 2

30. Arrowood repeats and incorporates by reference Paragraphs 1-23 of this Complaint for Declaratory Judgment as if fully set forth herein.

31. Since there is no evidence that a Royal affiliated insurer sold any applicable insurance that might cover the Diocese, Arrowood owes no obligations to the Diocese in connection with the Lawsuits. However, even if the Diocese can subsequently prove that Arrowood issued the Alleged Policies and the terms and conditions of such Alleged Policies, Arrowood is under no obligation to defend or indemnify the Diocese in connection with the Lawsuits for at least the following reasons:

    a.    The Diocese has no rights under any of the Alleged Policies unless the Diocese can prove that it was a named insured, additional insured or insured under the Alleged Policies.

    b.    There is no coverage or coverage is limited under all of the Alleged Policies to the extent that the applicable limits of liability of the Alleged Policies have been exhausted or impaired.

    c.    Coverage is barred under the Alleged Policies to the extent that the Diocese failed to comply with any notice provisions in the Alleged Policies.

      d.      Coverage is barred under the Alleged Policies to the extent any alleged injury was not caused by an "accident" as that term may have been used in the Alleged Policies.

      e.      Coverage is barred under the Alleged Policies and by public policy to the extent any judgment(s) in the Lawsuits includes punitive or exemplary damages.

      f.      Coverage is barred under the Alleged Policies to the extent the claims in the Lawsuits do not allege, involve or otherwise constitute covered "bodily injury" or "personal injury" as those terms may have been defined and/or used under the Alleged Policies.

      g.      To the extent that the Alleged Policies contain an assignment or similar provision, coverage is barred for persons or entities which have been assigned rights to the Alleged Policies without the written consent of Arrowood or whose interest in the Alleged Policies was secured without Arrowood's consent endorsed on the Alleged Policies or otherwise without full compliance with any assignment provisions in the Alleged Policies.

      h.      To the extent coverage otherwise would be available, coverage under the Alleged Policies is limited to the extent the Alleged Policies contain limitations on coverage, including without limitation limits of liability and each "accident" or aggregate limits.

       i.       To the extent the Alleged Policies provide that if the insured has other insurance (except insurance purchased to apply excess) against a loss covered by the Alleged Policies, the insurance under the Alleged Policies shall be excess insurance over any other valid and collectible insurance against such loss, and coverage under the Alleged Policies, if any, would be limited accordingly.

       j.       To the extent coverage otherwise would be available, coverage under the Alleged Policies is limited to the extent policy provisions preclude the stacking or accumulation of multiple policy limits of liability.

       k.       Coverage is barred under the Alleged Policies to the extent any insured has failed to mitigate, minimize or avoid injury or damage.

       l.       Coverage is barred under the Alleged Policies to the extent any insured's acts or failures to act gave rise to the Lawsuits and were in violation of law and/or public policy.

       m.       Once the precise nature of the Diocese's claims are ascertained through further discovery and investigation and/or the Diocese provides evidence as to the existence, terms and condition of the Alleged Policies, Arrowood reserves the right to assert all defenses which may be pertinent to the Lawsuits.

32.       There exists a substantial, bona fide, actual and justiciable dispute regarding the terms and conditions, application and/or interpretation of the Alleged Policies in connection with the Lawsuits.

33. As a result of this current controversy, Arrowood is entitled to have a declaration of its rights and a judicial interpretation of the rights and obligations of the parties under the Alleged Policies. There is no adequate remedy, other than that requested herein, by which this controversy may be resolved.

**WHEREFORE**, Arrowood respectfully prays as follows:

(a) That this Court enter a declaratory judgment that Arrowood is not obligated to defend or indemnify the Diocese in connection with the Lawsuits because the Diocese cannot prove the existence, terms and conditions of the Alleged Policies;

(b) That this Court enter a declaratory judgment that Arrowood is not obligated to defend or indemnify the Diocese under the Alleged Policies in connection with the Lawsuits because coverage is barred by one or more of the terms and/or conditions of the Alleged Policies; and

(c) That Arrowood be awarded such other and further relief that this Court deems just and proper.

DATED this 19th day of July, 2012.

<div style="text-align: right;">
s/ Marshal L. Mickelson  
Corette Pohlman & Kebe  
Attorneys for Plaintiff
</div>